Daugherty *et al. v.* Stuyvesant Ins. Co. *et al.*

Same *v.* Buffalo Ins. Co. *et al.*

(*Jackson*, April Term, 1935.)

Opinion filed July 29, 1935.

HARVEY E. TAYLOR, of Memphis, for appellants.

FITZHUGH, MURRAH & FITZHUGH and AUVERGNE WILLIAMS, all of Memphis, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

These consolidated causes were instituted for the purpose of recovering on two fire policies of $600 each. The chancellor entered decrees for the face value of the policies, with interest and twenty-five per cent. penalties. The Court of Appeals affirmed in all respects, except as to the penalties. Both parties filed petitions for writs of *certiorari.*

Complainants, Charles E. Daugherty and wife, negroes, on March 27, 1928, purchased the property involved, located in Memphis, from Dan Whitney for $1,850. They made a small cash payment and executed monthly notes for the balance, secured by a deed to the property executed to Digel and Johnson, trustees.

In the fall of 1930, Daugherty and wife procured the two policies in suit, insuring the eight-room dwelling on this property for three years. Just after these policies were issued, Whitney negotiated these notes to Tindall, who owned those that were unpaid at the time of the fire on January 16, 1933; the balance due on the notes being $495.

The only defense interposed was that the transfer of these notes operated as a transfer of the title to the

property in violation of the provisions of the policies, to support which counsel cite *Phoenix Mutual Life Ins. Co. v. Ætna Ins. Co.*, 166 Tenn., 126, 59 S. W. (2d), 517. In that case title to the property was transferred without notice to the insurer. In this case the title to the property was never transferred, and the policies contained the usual mortgage clauses: ''Loss or damage, if any, under this policy, shall be payable to George M. Digel and J. H. Johnson, Trustees, as interest may appear.''

This dwelling was occupied by two families, who were tenants of the Daughertys. The fire occurred about one-thirty A. M.; the only suggestion as to its origin being that the dwelling caught from sparks from a locomotive engine, it appearing that the property adjoins that of the railroad, where switching operations are engaged in during the night. The record shows that the Daughertys on two previous occasions had property damaged or destroyed by fire. There is not a thing in the record to suggest that either of these fires was of incendiary origin. These are very old negroes; Charles Daugherty having been a slave before the Civil War. It seems that if chapter 141, Acts of 1901, is to be given any effect, that this is a proper case for its application. In any event, we see no occasion for holding that the chancellor abused his discretion in allowing the penalties. The involved statute is as follows:

''That the several insurance companies of this State, and foreign insurance companies and other corporations, firms or persons doing an insurance business in this State, in all cases when a loss occurs and they refuse to pay the same within sixty days after a demand shall have been made by the holder of said policy on which said

loss occurred, shall be liable to pay the holder of said policy, in addition to the loss and interest thereon, a sum not exceeding twenty-five per cent. on the liability for said loss; Provided, that it shall be made to appear to the Court or Jury trying the case that the refusal to pay said loss was not in good faith, and that such failure to pay inflicted additional expense, loss or injury upon the holder of said policy; and, provided, further, that such additional liability within the limit prescribed shall, in the discretion of the Court or Jury trying the case, be measured by the additional expense, loss and injury thus entailed.'' Section 1.

It will be observed that this discretion is conferred upon the trial court and not upon the appellate courts, and the action of the trial court in this matter can only be reviewed or altered where he has abused his discretion. Formal demand for payment, as required by the statute, was duly made.

The insurers insist that the policies were never introduced in evidence. The policies were made exhibits to the cross-bill of Tindall, and the decrees recite that the causes were heard upon the bill, cross-bill, including polices exhibited thereto, answers, etc. The decrees also provide that upon appeal, by consent, the original exhibits will be sent up with the record.

The insurers in their answers admit the execution of the policies, but set up several matters of defense, in support of which they introduced no evidence.

The deed of trust securing these purchase-money notes provided for an attorney's fee, which was fixed at $100. The probability is that Daugherty and wife would not have had to pay this but for the failure of these insurers to comply with their contracts. They had not even a

colorable defense on these policies, and their refusal to pay was not, in our opinion, in good faith. To say that the transfer of a note secured by a mortgage affects or changes the title of the mortgagor in the property insured finds no support in law, logic, or custom.

The writ of *certiorari*, on the petition of the Daughertys, has heretofore been granted.

For the reasons stated, the decree of the Court of Appeals will be modified so as to hold the insurers liable for the penalty, as was decreed by the chancellor.