# PHOENIX INS. CO. v. JORDAN et al.—184 S. W. (2d) 721.

### Middle Section.  April 29, 1944.

Petition for Certiorari denied by Supreme Court, December 8, 1944.

12

J. G. Lackey, of Nashville, for appellant.

Cecil Sims and J. Vaulx Crockett, both of Nashville, for appellees.

14

HICKERSON, J. Clysta Jordan and Louise Staples, colored women, filed the original bill in this cause to recover under a fire insurance policy which was issued to them by defendant, Phoenix Insurance Company. The issues made by the original pleadings were: (1) complainants were not the sole and unconditional owners of the insured property; (2) the Insurance Company had waived its right to rely upon the requirement of the policy that the insureds must be the sole and unconditional owners of the insured property, or the Insurance Company was estopped to rely upon that condition in the policy; (3) complainants were estopped to assert the source or chain of title under which they claimed to be owners of the insured property because Clysta Jordan in a former suit had testified directly to the contrary; and (4) complainants were judicially estopped to assert that the Insurance Company had waived the provision in its policy which required sole and unconditional ownership of the insured property to be in the insureds; for in asserting such waiver complainants impliedly admitted that they were not the sole and unconditional owners of the insured property, and that position was directly inconsistent with the position which they took in their sworn proof of loss wherein they alleged: "At the time of the fire, the interest of your insured in the property described by this policy was sole and unconditional ownership, and no other person or persons had any interest therein or incumbrance thereon."

Upon these issues the proof was taken. After the case was tried in the Chancery Court complainants amended their bill so as to allege:

"That R. D. Black, deceased, was a negro born in slavery in the State of Tennessee, and of slave parents,

and that therefore with respect to property rights was illegitimate, and at the time of his death intestate and without issue, his real estate descended and vested in fee simple in his widow, Medora Black."

The Insurance Company filed an answer to this amendment in which it set out various reasons why the amendment should not have been allowed, which we shall consider later, and stated as follows:

"This defendant denies that the said R. D. Black was born a slave of slave parents, and denies that with respect to property rights he was illegitimate; and this defendant denies that the widow of R. D. Black took a fee simple title to the real estate of R. D. Black at the time of his death.

"On the contrary, this defendant avers that the said R. D. Black was legitimate, and born free, of free parents; and it avers that at the time of his death his property descended to his brothers and sisters under Section 8380 of the Code and not to his widow."

The Chancellor entered a decree in favor of complainants for the face amount of the policy with interest. From that decree the Insurance Company perfected a broad appeal to this Court and assigned errors. Complainants also assigned errors.

R. D. Black, a colored man, owned a house and lot in Nashville, Tennessee. Medora Black was his wife. Medora Black owned a small lot which adjoined the lot of her husband. When R. D. Black died these two deeds were placed of record in Davidson County, Tennessee. Thereupon Medora Black, the widow, put a picket fence around both lots, tore down the little three room house which was on the lot that her husband had owned, and built a five or six room substantial house on this lot. She

paid some notes which were due on the house and lot which was owned by her husband after his death. She paid for the new house entirely out of her own funds. The money to make these payments was earned by her by washing and ironing. She exercised complete control over this property from the death of her husband on January 19, 1914, until the widow died on April 20, 1932. After the death of R. D. Black, Medora Black married James H. Brien and lived with him until her death. On March 14, 1932, Dora B. Brien (Medora Black) executed a will in which she stated:

"I will and bequeath to my present husband, James H. Brien, all of my real estate for his natural life, provided he does not marry again. At the death of my husband this property will revert to my two cousins jointly to-wit: Louise Staples and Colista Jordan."

The property in question here was then fully described in the will.

After the death of Medora Black Brien, her husband, James H. Brien, continued to live on this property until he remarried. Upon his marriage Louise Staples and Clysta Jordan demanded that he give them possession of real estate which had been devised to them by their cousin, Dora B. Brien, his wife, construing the will to mean that his interest in the real estate ceased when he remarried. He refused to surrender possession of the property and suit was brought in the Chancery Court of Davidson County to eject him on September 20, 1933. The case was styled Clysta Jordan v. Louise Staples and James H. Brien, No. 46,693. In that bill, which was sworn to by Clysta Jordan, it was alleged:

"That the said R. D. Black died as above set out in 1914 on January 14th. That there were no children born

to the said R. D. Black and the said Dora Black and that there was no children born to the said R. D. Black during his life time. That at his death there were no brothers, sisters of his nor were his mother or father living and the said Dora Black being the only heir of the said R. D. Black inherited said property as the said R. D. Black died intestate.''

Clysta Jordan gave a deposition in that case in which she testified, directly contrary to the allegations of her bill, that R. D. Black had a sister and brother living at the time he died.

James H. Brien abandoned that suit and surrendered possession of the property to Clysta Jordan and Louise Staples, who claimed it under the will of Medora Black Brien.

During the time that James H. Brien occupied this property, after the death of Medora Black Brien, the house was insured by the Phoenix Insurance Company in the name of James H. Brien. On September 21, 1933, this insurance was transferred to Clysta Jordan and Louise Staples by an endorsement which stated:

''It is understood and agreed that title to property insured under this policy is now vested in Clysta Jordan and Louise Staples. All other terms and conditions of the policy remain the same.''

The endorsement was signed: ''J. O. Treanor & Son, Agents.''

Thereafter on July 7, 1937, the defendant Insurance Company issued the policy upon which the present suit is based to ''Clysta Jordan and Louise Staples.'' Clysta Jordan told the agent of the defendant company that she and her sister, Louise Staples, beame the owners of this property under the will of their cousin, Medora Black.

There was some controversy as to whether the name of Louise Staples should appear in the policy as one of the insureds, but the company insisted that the policy should be written in both names. Clysta Jordan explained to the agent of the company that the will was on record in Davidson County, but the company did not go to the record to investigate the terms of the will.

The policy of insurance contained this provision: "This entire policy, unless otherwise provided by agreement ·endorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be a building on ground not owned by the insured in fee simple."

The house burned while this policy was in force. The required proofs of loss were submitted to the Insurance Company and after an examination of the same the Insurance Company denied liability. Whereupon, the present suit was brought.

The following determinative issues are submitted to this Court: (1) Did the Chancellor err in permitting the amendment by which complainants alleged that R. D. Black was an illegitimate person? (2) Should the death certificate of R. D. Black have been admitted in evidence? (3) Were complainants judicially and equitably estopped from claiming title to the insured property under Code Section 8383, this statute governing descent of realty of illegitimate persons? (4) Did the proof show that complainants were the sole and unconditional owners of the insured property within the meaning of the provisions of the policy contract? (5) Did the title to the property revert to complainants when the husband of Medora Black Brien remarried, under the provisions of her will?

(6) Did the proof justify the amount of the decree? (7) Should interest have been allowed?

These questions will be considered and determined in the order stated.

The Insurance Company contends that the amendment whereby complainants alleged that R. D. Black was an illegitimate person should not have been allowed because: (1) the amendment was inconsistent and contradictory to the original and supplemental bills; (2) the amendment brought in a new cause of action which was barred by the contractual limitation of one year provided in the policy; (3) by the amendment complainants abandoned the original theory of their case and substituted a new theory which was inconsistent with the former theory; and (4) complainants gave no excuse for their failure to incorporate the facts alleged in the amendment in their original bill.

We quote the applicable Code Sections.

Code Section 8711: "The court may allow material amendments at any stage of the proceedings, upon such terms, and subject to such rules, as it may prescribe."

Code Section 10416: "The court may, at any stage of the cause, even after argument, if it be thought necessary to justice, permit amendments of the bill, upon such terms as may appear reasonable."

■ The allowance of amendments is within the sound discretion of the Chancellor, and his action will not be disturbed by this Court unless there was a clear abuse of discretion. Tennessee Fertilizer Company v. International Agr. Corp:, 146 Tenn. 451, 243 S. W. 81; Chattanooga Ice Delivery Company v. George F. Burnett Company, 24 Tenn. App. 535, 147 S. W. (2d) 750.

■ Courts of this State are liberal in allowing amendments to pleadings so as to reach the merits of the case

and do justice. Gibson's Suits in Chancery (Higgins and Crownover), Section 428; Patton v. Dixon, 105 Tenn. 97, 58 S. W. 299.

We do not think the contentions of the defendant in regard to this amendment are sound. Complainants' bill was simply a suit based upon an insurance policy or contract. Complainants were the named insureds in the face of the policy. They alleged they were the owners of the insured property. As a matter of defense the Insurance Company relied upon the provisions of the policy which required complainants to be the sole and unconditional owners of the insured realty as a condition to the validity of the contract. It is true they set out in their original bill that their chain of title went back to R. D. Black who died without heirs, and the necessary inference from that statement is that they claimed title through him under Code, Sections 8380-8382. These Code Sections are applicable to the property of legitimate persons.

We recognize the rule that a litigant must maintain a consistent position throughout the litigation. Stamper v. Venable, 117 Tenn. 557, 97 S. W. 812; Stearns Coal & Lumber Company v. Jamestown R. Company, 141 Tenn. 203, 208 S. W. 334.

The general purpose of the suit is consistent with the amendment: that the Insurance Company had issued a policy of fire insurance upon property which complainants owned. If that ownership were proved complainants would be entitled to recover under the policy. The proof showed that R. D. Black did leave heirs at law surviving him. So complainants could not establish their ownership through him if he were a legitimate person, because his widow would not acquire the fee-simple title

to his property. But the Chancellor admitted other evidence which showed that R. D. Black was an illegitimate person. Now if he were illegitimate his widow would acquire a fee-simple title to his property under Code, Section 8383. We do not think an equity court should deny complainants the right to show that they came within the provisions of this insurance policy because they alleged facts relating to their ownership which they could not prove, when they established other facts which did prove their title. There was never but one cause of action. Complainants did not change their theory. They simply proved their theory by facts which they did not know existed when they filed their original bill—that they were the owners of the insured property.

Solicitors for complainants and defendant frankly admit that they did not recognize the value as evidence of the death certificate of R. D. Black until the case was about ready for trial in the Chancery Court. When they did recognize the value of this evidence complainants promptly sought to amend their bill. We think the Chancellor correctly permitted them to do so.

Did the Chancellor err when he permitted the death certificate of R. D. Black to be introduced in evidence? Defendant objected to the introduction of this death certificate on one ground: that it was not signed by the informant:

Complainants contend that this question could not be made collaterally by defendant in the present suit, and the Chancellor sustained that contention. We have not been able to find a case directly in point.

In Continental Casualty Co. v. Nashville, etc., Trust Co., 166 Tenn. 342, 61 S. W. (2d) 461, a death certificate was held to be a public record.

In 45 Am. Jur. 423, section 9, the general rule is stated to be that: "Under direct attack a record does not import verity. No presumptions arise to support it, and it can survive only in the event that it speaks the truth and is free from error. However, a record so far denotes absolute verity that it is not subject to collateral attack unless it is a nullity. This general rule applies only to such records as are required by law to be made and kept."

Reason sanctions the rule that due execution of a public record should not be open to collateral attack. Death certificates in this State are required by legislative enactment to be prepared with the greatest care. If the execution of these documents could be brought in question collaterally, their use as evidence would be to a great extent destroyed. To attempt to go into each question collaterally which could be made on the execution of these death certificates would involve more proof frequently than the cause in which they were introduced as evidence. For example: the statute requires the undertaker to procure and file the death certificate. The medical certificate must be signed by the attending physician. Personal and statistical particulars must be acquired "from the person best qualified to supply them, over the signature and address of his informant." The certificate must "state the facts required relative to the date and place of burial" over the signature and address of the undertaker.

Now suppose a certified copy of a death certificate is offered in evidence and it appears regular on its face in every way; but objection is made to its admission in evidence on the grounds: (1) that the signature purporting to be the signature of the person who gave the personal and statistical particulars was not in fact his

signature; (2) that the undertaker obtained the personal and statistical particulars appearing in the certificate from some person who was not the best qualified to supply them; (3) that the signature purporting to be the signature of the attending physician was not in fact the physician's signature; (4) that the signature purporting to be the signature of the undertaker was not in fact his signature; (5) that the address purporting to be the address of the informant concerning the personal and statistical particulars was not in fact the informant's address; and (6) that the address of the undertaker was not in fact the undertaker's address. · All of these formalities in connection with the preparation and execution of the death certificate are required by statute; but it is perfectly evident that the litigants could not possibly go into these collateral matters. Furthermore, they would have no notice whatever that these questions would be raised until they were in the midst of the trial. Take the death certificate under consideration as an example: it appears from this certified copy that the undertaker, Taylor & Company, signed by a printed stamp and not by a written signature; and yet this certificate seems to have been acceptable to the Division of Vital Statistics.

██ Upon consideration of the entire matter we hold that the execution of this death certificate, which is a public record, cannot be collaterally attacked. Of course, the facts stated therein are only prima facie true, and evidence may be introduced to show that these facts are not true.

██ ██ It is insisted that complainants are judicially and equitably estopped from claiming title under Code, Section 8383 which governs estates of illegitimate persons. This contention is based upon the following facts:

In a suit prior to the instant case, in the original bill in the present suit, and in the proof of loss, all of which were sworn to, Clysta Jordan alleged facts which showed that she inherited the insured property in question from Medora Black, widow of R. D. Black, under Code, Sections 8380-8382 which relate to realty of legitimate persons; whereas, complainants now contend that they are the owners of this property because R. D. Black was an illegitimate person and Medora Black, his widow, inherited his real property under Code, Section 8383, which relates to illegitimate persons. Appellant cites the following cases to sustain this contention: Mecklenburg Real Estate Company v. Kyoleum Company, 142 Tenn. 295, 218 S. W. 821, 14 A. L. R. 944; Canton Cotton Mills v. Bowman Overall Company, 149 Tenn. 18, 257 S. W. 398; Stamper v. Venable, 117 Tenn. 557, 97 S. W. 812; Stearns Coal, etc., Company v. Jamestown R. Company, 141 Tenn. 203, 208 S. W. 334; Sartain v. Dixie Coal, etc., Company 150 Tenn. 633, 266 S. W. 313.

The proof shows that Clysta Jordan had no information about the heirs of R. D. Black except hearsay. In the suit which she filed prior to the present suit she alleged that R. D. Black had no heirs, but in her testimony in that case she swore that he did leave heirs surviving him. When she filed the present suit she swore to the bill in which she alleged that he had no heirs when he died. She testified in the present suit that she thought those facts were true because the undertakers had told her that the facts to which she had formerly testified were not true. We do not think the rules require a person who is honestly mistaken about facts to be bound by those facts in a sworn pleading or testimony when it later develops that the information which the party had con-

cerning the facts was incorrect. It is plain to see from a reading of the testimony of Clysta Jordan that she had no definite knowledge about the facts but only testified to what someone had told her. Under those conditions we do not think she would be estopped judicially or equitably from asserting the true facts when she learned them. Carter, Executor, v. Pickwick Greyhound·Lines, 166 Tenn. 200, 60 S. W. (2d) 421.

It is plausibly argued by Solicitors for complainants in their brief that a statement in the bill that R. D. Black died without leaving heirs and, therefore, his land de-·scended to his widow was not equivalent to an assertion that he was legitimate. If he died without heirs his realty would descend to his widow if he were legitimate or illegitimate.

In Wagner v. Brady, 130 Tenn. 554, 558, 171 S. W. 1179, 1180, the court said: "The original bill was sworn to, and its averments must stand as binding upon the complainant. The amendment is susceptible of a construction which will save it from being held repugnant to the original averment, and that construction will be given it."

The Chancellor allowed the amendment in his discretion. R. D. Black could have died without heirs and still been illegitimate. Wherefore, the amendment and the allegations of the original bill are not necessarily inconsistent. A great deal of latitude is given a Chancellor in regulating the conduct of the case so as to do complete justice. We cannot hold that the Chancellor abused his discretion in this case because complainants were estopped to assert that R. D. Black was an illegitimate person.

Getting down to the merits of the case: did the proof show that complainants were the sole and unconditional

owners of the insured property within the meaning of the policy contract?

■ The Chancellor correctly construed the will of Medora Black Brien to mean that if her husband, James H. Brien, remarried his interest in the property would cease.

Complainants have advanced two theories in support of their contention that they are the sole and unconditional owners of the insured property within the meaning of the insurance policy. First, that the fact is proved prima facie by the death certificate of R. D. Black and the rules of law and presumptions relating thereto. Second, without considering the death certificate, complainants were still entitled to recover in this cause as sole and unconditional owners of the insured property.

The death certificate shows that R. D. Black was born on October 4, 1863, in the State of Tennessee; that Moses Jackson was his father and Charity Coleman was his mother, and that the birth place of his father and mother was Tennessee. The death certificate of Charles Black, a half brother of R. D. Black, shows that he was born in Tennessee on December 25, 1868, and that his father's name was Jack Black and his mother's name was Charity Coleman, and that the birth place of the father and mother of Charles Black was Tennessee. These death certificates are prima facie evidence of the facts therein stated. Code, Section 5863. There is no contrary evidence, so we hold as a fact that R. D. Black was born in the State of Tennessee on October 4, 1863, and that his father was Moses Jackson and his mother was Charity Coleman and that both of them were born in the State of Tennessee.

■ There is a presumption that a negro who was born in a slave state prior to the abolition of slavery was a

slave. 58 C. J., section 5, page 748; Bennett v. State, 31 Tenn. 411; Brothers v. State, 42 Tenn. 201.

Slaves were emancipated in Tennessee by the ratification of the amendment of the Constitution of the State on February 22, 1865. Gholson Adm'r v. Blackman, 44 Tenn. 580.

Persons born of parents while in a state of slavery are illegitimate. There was no capacity to contract, so there could be no lawful marriage in such cases. It follows that there was no lawful issue. Cole v. Taylor, 132 Tenn. 92, 177 S. W. 61; Napier v. Church, 132 Tenn. 111, 177 S. W. 56.

Where an illegitimate person dies in this State intestate without issue his real estate descends to his widow and she takes the title thereto in fee simple. It does not go to his collateral heirs. Code, Section 8383.

Would complainants be considered sole and unconditional owners of the insured property within the meaning of the policy contract without the aid of the death certificate of R. D. Black? We think they would. Medora Black, the widow of R. D. Black, certainly understood and thought that she was the sole owner of this realty upon the death of her husband in 1914. She took absolute charge of the property, tore down the small house which was located upon it, erected a five or six room substantial house, built a fence around the property, and devised it by specific description to complainants in this cause. Complainants certainly thought they were the owners in fee simple of this property under the will of Medora Black Brien because a suit was brought to oust James H. Brien when he remarried. Their source of title was explained to the Insurance Company. No person in the world is claiming to own this property adversely to complainants.

Medora Black and complainants were in absolute, adverse possession of this property for more than twenty years.

The purpose of the provision requiring sole and unconditional ownership as a condition to a valid fire insurance contract is to guard against fraud. If the insureds and their predecessors in title have been in possession of the insured premises under color of title and in good faith believe that they are the sole and unconditional owners thereof and their title papers purport to convey to them in fee simple the insured premises and they are holding the same as absolute owners against all other persons and no other persons claim any right or title thereto, we hold such owners to be the sole and unconditional owners of the insured property within the meaning of the insurance policy. To meet that requirement the insureds are not compelled to be able to successfully defend any suit which might be brought against them. It is enough if they are the absolute owners of the property in the generally accepted sense and are holding the same against all persons in good faith with no other persons asserting any claim or ownership to the property. Allemannia Fire Insurance Company v. York, 16 Tenn. App. 167, 65 S. W. (2d) 838; Phenix Insurance Company v. Bowdre, 67 Miss. 620, 7 So. 596, 19 Am. St. Rep. 326; Rochester Loan & Banking Company v. Liberty Insurance Company, 44 Neb. 537, 62 N. W. 877, 48 Am. St. Rep. 745; National Union Fire Insurance Company v. Short, 32 F. (2d) 631, 64 A. L. R. 753; Ætna Insurance Company v. Kacharos, 226 Ala. 504, 147 So. 438, 91 A. L. R. 1432; Roberts v. American Alliance Insurance Company, 212 N. C. 1, 192 S. E. 873, 113 A. L. R. 310; 29 Am. Jur. 497, Insurance, section 617.

We have no doubt that the Chancellor correctly held that complainants were the sole and unconditional owners

of the insured property within the meaning of the insurance policy. It follows that complainants had an insurable interest in the property, and the issue of the burden of proof upon the question of sole and unconditional ownership becomes immaterial, because there is no evidence to the contrary.

We think the proof fully justifies the amount of the recovery fixed by the Chancellor.

There remains only the question of the allowance of interest. Code, Section 7305 provides: "Demands bearing interest.—All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned."

██ ██ Under this section courts are compelled to allow interest in all cases which come within its terms. Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn. 391, 258 S. W. 776. In People's Bank & Trust Company v. United States Fidelity & Guaranty Company, 156 Tenn. 517, 3 S. W. (2d) 163, 164, our Supreme Court said: "A policy of life insurance falls within this section and bears interest from the time it becomes due and payable. The allowance of interest is imperative. Knights of Pythias v. Allen, 104 Tenn. 623, 58 S. W. 241. Fire insurance policies, accident insurance policies, and other insurance contracts proper would come under this section of the Code."

██ In cases which do not fall within the provisions of the statute the allowance of interest is a matter within the discretion of the Chancellor. Tennessee Fertilizer Company v. International Agr. Corp., 146 Tenn. 451, 243 S. W. 81.

30

If the policy of insurance in this case came within the provisions of the statute, the Chancellor must allow interest. If it did not come within the provisions of the statute his allowance of interest would be within his discretion. Taking the view most favorable to the Insurance Company, we cannot say the Chancellor abused his discretion. To the contrary, we think interest should have been allowed under all the facts and circumstances of this case.

The assignments of error filed in behalf of the Insurance Company are overruled. The second assignment of error filed in behalf of complainants is sustained and the others are overruled. Let the decree of the Chancery Court be affirmed with costs.

Felts and Howell, JJ., concur.