F. T. THAYER, JR., Appellee, v. THE WRIGHT
COMPANY, INC., and UNITED PACIFIC INSUR-
ANCE COMPANY, Appellants.—362 S. W. (2d) 805.

Western Section. August 31, 1961.

Certiorari Denied by Supreme Court November 28, 1962.

516

Hanover, Hanover, Hanover & Walsh, and Laughlin, Watson & Carson, Memphis, for appellants.

Rosenfield, Borod, Fones & Bogatin, Memphis, for appellee.

BEJACH, J. In this cause, The Wright Company, Inc. and United Pacific Insurance Company appeal from a

decree in the sum of $44,235.09, recovered against them in the Chancery Court of Shelby County by F. T. Thayer, Jr. Complainant F. T. Thayer, Jr. was the general contractor for the building of a branch store for Sears Roebuck & Company on Poplar Avenue in Memphis, Tennessee, and The Wright Company, Inc., formerly known as Frank A. Wright, Masonry Contractor, Inc., was subcontractor for part of the structure involving the installation of terra cotta tiles. The United Pacific Insurance Company, as surety for said subcontractor, guaranteed faithful performance of its contract with F. T. Thayer, Jr.,—which contract was dated October 24, 1956. In this opinion the parties will be referred to as complainant and defendants, as general contractor, subcontractor, and surety, or called by their respective names. Under its contract with the general contractor, the subcontractor agreed to install the terra cotta tiles in a workmanlike manner, according to plans and specifications for the building, and in accordance with printed directions of the manufacturer of the material; and said contract provided that all work was to be performed in a workmanlike manner. After the work was completed, it was found that some of the terra cotta was loose, and some of it began to fall from the places where it had been installed; following which, the general contractor, the architect, the manufacturer of the tile, and the subcontractor's representative conducted an investigation to determine why the terra cotta failed to adhere to the walls and why some of it fell from the places where it had been installed. The explanation, as was asserted by complainant Thayer, and as was found by the verdict of the jury, was that the defendant, The Wright Company, Inc., did not originally perform the work in a workman-

like manner, and did not abide by and follow the specifications and manufacturer's directions in applying the terra cotta tile. More specifically, it was found that the subcontractor did not apply a brush coat of Portland cement and water to many of the sections prior to setting same, and failed to apply a full bed of mortar to the outside walls of the building prior to setting in place the terra cotta, so that the back of the terra cotta would adhere thoroughly throughout its entire surface to the bed of mortar, and so that the full bed of mortar would be applied to the wall of the building and fill the entire space between the wall building and the terra cotta tile. The complainant, the general contractor, was required to remove all the terra cotta which was not bedded with a solid bed of mortar, and not properly bonded to the structure, and to perform all work necessary to installation of the terra cotta in accordance with the original specifications. The complainant thereupon made demand on the defendant, The Wright Company, as the subcontractor, and also on its surety, the United Pacific Insurance Company, to comply with these requirements; but both of them refused to do so. After such refusal by The Wright Company and its surety, the complainant sought bids from several masonry contractors to furnish the labor and equipment to remove and replace all terra cotta that was not installed in accordance with the plans and specifications. A contract to that end was awarded to V. C. Kindig for the sum of $58,843.98. To that sum the complainant added 5% or $2,442.20, claimed as compensation for his time, overhead, office and miscellaneous expenses incurred incident to the performance of the work by V. C. Kindig, and brought suit on August 24, 1959 to recover the sum of $51,286.18, together with interest thereon.

Both defendants filed answers in which they denied liability. They undertook to rely on the following defenses: 1. That the details of installation did not appear in the plans, drawings, and specifications, and that they were not provided with the manufacturer's directions containing details for the installation of the terra cotta; and that they installed the terra cotta in a workmanlike manner according to accepted standards and practice in masonry in this locality; 2. That the plans and specifications were faulty in that they failed to provide for expansion joints; 3. That the architect and the contractor had supervisors on the job and did not object to the manner in which The Wright Company installed the tile; 4. That the work had been approved and accepted by the architect and the owner and The Wright Company paid in full. The cause was tried to a jury, and the following issues were submitted:

"ISSUES OF FACT

"I

"Did the defendant subcontractor fail to install the terra cotta in accordance with the general conditions of the contract between Sears Roebuck & Company and F. T. Thayer, Jr., the complainant general contractor, and in accordance with the drawings and specifications prepared by the architect A. L. Aydelott & Associates: Answer Yes or No. If your answer to issue No. I is No it is not necessary that you answer No. II. If your answer to issue No. I is Yes, then you will answer issue No. II.

"II

"What damages were sustained by the complainant general contractor as a result of the failure of the

defendant subcontractor to install the terra cotta in accordance with the general conditions of the contract between Sears Roebuck & Company and the complainant general contractor, and in accordance with the drawings and specifications prepared by the architect? Answer in dollars and cents $————"

To issue No. I, the jury answered "Yes"; and to issue No. II, the jury answered $44,235.09".

Defendants moved for a new trial and the complainant moved for a decree on the verdict, for allowance of a 5% override, and for allowance of attorneys' fees, which questions the Chancellor had reserved, together with interest on the amount recovered. Proof was heard by the Chancellor on complainant's claim for 5% override and for attorneys' fees and for interest, but he denied complainant's claim for either of these items. After the defendants' motion for new trial was overruled, both defendants prayed and perfected their appeal to the Court of Appeals. The complainant also prayed and perfected his appeal from the ruling of the Chancellor denying interest on the recovery, denying the 5% override claimed by complainant, and denying the allowance of attorneys' fees as part of the complainant's damages.

As appellants in this Court, the defendants, The Wright Company and the United Pacific Insurance Co., have filed thirteen assignments of error. These assignments present eight questions to be determined by this Court. Assignments I and III claim that the verdict was contrary to the preponderance of the evidence, and assignments IV and V assert that there was no evidence to support the verdict of the jury. Assignment II complains as to the form of issue I as submitted to the jury.

Assignments VI, VII, and VIII complained because special issues requested by defendants were not submitted to the jury, and assignment XIII complains because no separate issue was submitted as to work in the coping of the service station. Assignments IX and X complain because of the failure of the Chancellor to give special instruction requested by defendants. Assignment XI complains of the Chancellor's charge to the jury. Assignment XII complains because Sears Roebuck & Company, the owner of the property involved, was not made a party to the suit. We will now dispose of these eight questions presented in the order named.

■ ■ The complaints that there is no evidence to support the verdict of the jury, and that the verdict was contrary to the weight and preponderance of the evidence are wholly without merit. It is ridiculous to contend that there was no material evidence to justify the verdict which the jury returned in this cause; and this Court is not concerned with the preponderance of the evidence. Callahan v. Town of Middleton, 41 Tenn. App. 21, 27, 292 S. W. (2d) 501; Accident & Cas. Ins. Co. v. Lassater, 32 Tenn. App. 161, 165, 222 S. W. (2d) 202; DeRossett v. Malone, 34 Tenn. App. 451, 239 S. W. (2d) 366; and numerous other authorities. In that situation, the verdict having been approved by the Chancellor, it has the same force and effect as a jury verdict in a law court. Same cannot be set aside by the appellate courts where there is any material evidence to support the verdict. Buice v. Scruggs Equip. Co., 37 Tenn. App. 556, 267 S. W. (2d) 119; Stafford v. Stafford, 1 Tenn. App. 477; Myer v. Cooper, 6 Tenn. App. 38; Nat'l Life & Accid. Ins. Co. v. Am. Trust Co., 17 Tenn. App. 516, 68 S. W. (2d) 971; Standard Life Ins. Co. of the South v. Strong, 19 Tenn.

App. 404, 89 S. W. (2d) 367. Troy Graham, an employee of the defendant Wright Company, admitted that he did not soak the tile, and there is evidence in the record to the effect that Frank Wright, head of the defendant Wright Company, deliberately refused to comply with the manufacturer's instructions because more expense would be involved in installing the tiles in that manner.

■ Defendants' complaint as to the form of issue No. I submitted to the jury is without merit. This issue, as submitted to the jury, was as follows:

"Did the defendant subcontractor fail to install the terra cotta in accordance with the general conditions of the contract between Sears Roebuck & Company and F. T. Thayer, Jr., the complainant general contractor, and in accordance with the drawings and specifications prepared by the architect A. L. Aydelott & Associates?"

On the subject "Frame of issues of fact for jury", Gibson's Suits in Chancery, 5th Ed. at section 577, says:

"The issues of fact, to be determined by the jury, are made up by the parties under the direction of the court; and they should set forth briefly and clearly the true questions of fact to be tried. The Chancellor has the power and it is his duty to so shape the issues submitted by the parties as to present the material and determinative questions of fact made by the pleadings, briefly and clearly. These issues must, of course, be responsive to the pleadings, and must be so comprehensive of the questions of fact put in issue by the pleadings that, when determined by the jury, the court will be able, upon the

findings of the jury, and the balance of the record, to pronounce a full and complete final decree on all the material matters involved in the controversy."

Issue No. I quoted above, together with issue No. II, which presented the question of amount of damages, comply, in our opinion, with the above requirements as set out in Gibson's Suits in Chancery.

■ The Chancellor did not commit error in refusing to submit special issues complained of in assignments of error VI, VII and VIII. Assignment of error VI complains because the Chancellor did not submit an issue presenting the question of whether or not complainant had waived defective performance by the subcontractor. No issue on this question was presented by the pleadings. Also, all defects complained of in this suit were latent defects, not discoverable by inspection after the tile had been applied; and, in any event, the contract for the breach of which suit was brought, expressly provides that final acceptance and payment shall not relieve the subcontractor of responsibility for faulty materials or workmanship, and that he shall remedy any defects and pay any damage that shall appear within a period of one year after the date of final certificate.

■ The special issue, refusal to submit which is complained of by assignment VII, has to do with the failure of the specifications to provide for expansion joints,—it being contended by defendants that much of the damage complained of was caused by failure to have expansion joints. Because of the failure of the specifications to provide for expansion joints, Kindig, in replacing the defective work of defendants, was instructed not to use expansion joints, notwithstanding the manufacturer

recommended same for the replacement job. Furthermore, the Chancellor charged the jury that complainant would not be entitled to recover for damage caused by absence of expansion joints; and the record shows that damage to tiles replaced by Kindig, caused by absence of expansion joints, was paid for by complainant, himself.

■ The special issue, failure to submit which is complained of by assignment VIII, presented the question of whether or not defendant, The Wright Company, had in good faith substantially complied with the terms of its contract. This was a question of law and not of fact, and same was amply covered by the charge of the Chancellor. From that charge we quote as follows:

"In connection with issue No. I submitted to you, you are charged that it is the obligation of the defendant subcontractor to install the terra cotta wherever reasonably possible in accordance with the general conditions of the contract between Sears Roebuck & Company and F. T. Thayer, Jr., the complainant general contractor, and in accordance with the drawings and specifications prepared by the architect, A. L. Aydelott and Associates. The law, however, does not require perfection and the test of performance of that obligation is installation in substantial compliance with the general conditions and drawings and specifications, that is, without material variance, wherever reasonably possible."

■ Assignments of error IX and X complain of failure of the Chancellor to give to the jury special instructions requested by defendants. One of these dealt with the question of whether or not the architect and the general contractor should have supervised the installa-

tion of tile by the subcontractor; and the other deals with the question of whether the complainant, as general contractor, had waived defects in the manner of performance by defendant, The Wright Company. As will be more specifically pointed out hereinafter, there was no duty on the part of the general contractor to supervise the installation by the subcontractor; and, as is pointed out above, the defects complained of in this suit are all latent defects, subsequent discovery of which were expressly provided for by the subcontractor's contract.

■ Assignment of error XI complains because the Chancellor charged the jury as follows:

"Insofar as the defendant subcontractor was concerned, neither the general contractor, who is the complainant, nor the architect, is under any obligation to direct the defendant subcontractor or his employees how to perform the work, or to supervise it."

This was a correct charge because the contract between the general contractor and the subcontractor expressly provided that the subcontractor assumed towards the owner with reference to the subject matter of his subcontract, all obligations which were owed by the general contractor to the owner under his contract.

■ Assignment of error XII complains because Sears Roebuck & Company, the owner of the property on which the contractual work here involved was done, was not made a party to the suit. Even though Sears Roebuck & Company might have been a proper party, in our opinion, it was not a necessary party. On this subject, Gibson's Suits in Chancery, 5th Ed., at section 101, says:

"A distinction exists between *proper* parties, and *necessary* parties: proper parties are those whose interests in the matter involved in the litigation are such that a decree may be properly pronounced against without their being before the court; whereas, necessary parties are those without whom no complete decree can be made.

"1. *Necessary parties* are: 1. Those who are entitled to share in the benefits of the relief sought; 2. Those who are indebted to the complainants or who are withholding from them their legal or equitable rights or property; 3. Those who are doing or attempting to do complainant some injury; 4. Those who have legal or equitable titles or claims adverse to those set up by the complainant; 5. Those who hold titles or interests which, if not bound by the decree, might cloud the title of the complainants, or that of the purchaser at the master's sale; and 6. Those having any interest in the subject in the litigation present or contingent."

On behalf of defendants, it is contended that Sears Roebuck & Company qualified as a necessary party under the above quoted passage from Gibson, because, under its contract with complainant Thayer, it was entitled to share any savings effected by him under his contract with Sears Roebuck & Company. The record shows that Thayer expended $1,745,695.91 in performing his contract, which sum exceeded the contract price by $49,164.51. Since the entire amount sued for in the instant case, exclusive of attorneys' fees which were not allowed, is less than the total amount of this excess, it follows that Sears Roebuck & Company can have no interest in the complainant's recovery, and is, therefore, not a necessary party.

 Assignment of error XIII complains because no separate issue was submitted to the jury "regarding the responsibility of the subcontractor in connection with the work performed by him on the walls or coping of the service station." No such separate issue was submitted by counsel for defendants, consequently, for this reason alone, the Chancellor cannot be put in error for failure to submit such separate issue. In any event, it is our opinion that the issues as actually submitted fairly present all material issues of fact necessary for disposition of this case.

It results that all assignments of error filed by defendants, as appellants in this court, will be overruled.

We next take up the assignments of error filed in this Court by complainant F. T. Thayer, Jr., as cross appellant. These assignments of error are as follows:

"1. The Chancellor erred in holding that the complainant was not entitled to 5% of $44,235.09 as a proper element of compensatory damages.

 \* \* \* \* \* \*

"2. The Chancellor erred in refusing to award complainant a reasonable solicitors' fee against defendant, United Pacific Insurance Company, under the terms of the bond. \* \* \*""

 Complainant's first assignment of error complains because the Chancellor did not allow a 5% override on $44,235.09, the amount of Kindig's contract to replace the defective work of defendant, The Wright Company. There is no provision for such override in the contract between complainant and F. T. Thayer, Jr. and the Wright Company, although there is a provision for

a 4% override in the contract between complainant F. T. Thayer Company and Sears Roebuck & Company. No cases directly in point are cited by counsel for complainant in support of this contention. In our opinion, there being no provision in the contract between F. T. Thayer, Jr. and The Wright Company for such override in connection with the original installation, we think the Chancellor ruled correctly in denying it for the replacement job.

In support of their claim for solicitors' fees as a part of complainant's recovery, counsel for complainant cite the case of City of Bristol v. Bostwick, 146 Tenn. 205, 240 S. W. 774. In that case, City of Bristol completed a contract for a public building on which an insolvent contractor had defaulted, and enforced against the contractor's surety, not only its own claim for completing the building, but also the claims of laborers and material men against the contractor. From the opinion of the Supreme Court written by Mr. Justice Bachman, we quote as follows:

"A fee of $3,000 will be allowed the solicitors for the complainants for their services in this and the chancery court, one-half of the amount to be paid by the defendants and one-half out of the amount realized by the successful claimants. The language of the bond assuring the city indemnity is plain, broad, and unambiguous; it is an undertaking by the surety, for compensation, to hold the city harmless against claims of every description incurred in suits or otherwise growing out of the prosecution of the work. That the city rightfully brought suit to enforce the obligations of the defendants has been determined, and it is clear that the bond is sufficiently

comprehensive to include the fees of counsel incurred by the city in good faith and made necessary by reason of the default of the contractor for whose faithful performance the surety stood bound. The efforts of counsel in sustaining liability upon the bond has enured to the benefit of the successful claimants, and it is just that they should bear their proportionate part of counsel fees, as heretofore indicated." City of Bristol v. Bostwick, 146 Tenn. 217, 240 S. W. 777.

▆▆ ▆▆ It is apparent that the suit of the City of Bristol in the Bostwick case, insofar as it sought to and did enforce the claims of laborers and material men, was in the nature of a general creditors bill, which might be considered as having justified the allowance of attorneys' fees in that case. That feature of the case is not applicable to the case at bar. It will be noted, also, in the instant case, that claim for solicitors' fees is made against the defendant insurance company, only, and not against the defendant The Wright Company, Inc. On this aspect of the situation, counsel for defendants cite the cases of Nashville v. Singer & Johnson Fertilizer Co., 127 Tenn. 107, 117, 153 S. W. 838; Stringfield v. Hirsch and Neal v. Neal, 94 Tenn. 425, 430-437, 29 S. W. 609, as authority for the proposition that "Where the obligee in a bond shows no right of recovery against the principal on his contract, there can be no recovery against the surety." More specifically, however, the Supreme Court, in Stringfield v. Hirsch, 94 Tenn. 425, 29 S. W. 609, and Williams v. Burg, 77 Tenn. 455, and this Court, in Gillespie v. Federal Compress & Warehouse Co., 37 Tenn. App. 476, 500-501, 265 S. W. (2d) 21, have held that in the absence of statutory provision therefor, or con-

tractual agreement between the parties, the allowance of solicitors' or attorneys' fees as part of the damages recoverable is contrary to public policy in Tennessee. We find no reason in the instant case to vary this rule of public policy in favor of complainant. Both of complainant's assignments of error will, therefore, be overruled.

So far as complainant's claim that interest should have been allowed on his recovery is concerned, we think the allowance or disallowance of interest was within the discretion of the Chancellor. Complainant's claim, being unliquidated, did not, as a matter of law, include interest; and we cannot say that the learned Chancellor abused his discretion in disallowing interest. See Mack v. Hugger Bros. Const. Co. 10 Tenn. App. 402, 420, and Sec. 47-1607 T. C. A.

It results that the decree of the Chancery Court will be in all things affirmed. A decree will be entered in this Court in favor of the complainant, F. T. Thayer, Jr., and against the defendants, The Wright Company, Inc. and the United Pacific Insurance Company, and the Ohio Casualty Insurance Company, their surety on the appeal bond, for the sum of $44,235.09, together with interest thereon at the rate of 6% per annum from June 3, 1960, the date of final decree in the Chancery Court of Shelby County, Tennessee, and the costs of the cause, including both those of the lower court and those of the appeal.

Avery, P. J. (W. S.), Carney, J., concur.