Robert L. JOHNSON, Petitioner,

v.

TENNESSEE FARMERS MUTUAL INSURANCE COMPANY, Respondent.

Supreme Court of Tennessee.

June 13, 1977.

Roy T. Campbell, Jr., Newport, for petitioner.

Edward F. Hurd, Newport, for respondent.

## OPINION

HARBISON, Justice.

This is an action on an automobile theft insurance policy. The trial court found the value of the vehicle on the date of the theft to be $4,400.00 and allowed judgment for the insured in that amount, plus interest of $270.24, representing the difference between the amount necessary to discharge a mortgage on the vehicle on the date of the loss and the necessary amount on the day of the trial. In addition the trial court allowed a statutory bad-faith penalty of ten percent of the value of the vehicle, pursuant to T.C.A. § 56–1105. Although the insured had sued for loss of the use of the vehicle as provided in the policy, the proof offered on that subject was undocumented and indefinite in amount, so that no recovery was allowed for that portion of the claim.

Only the insurer appealed from the judgment of the trial court, assigning as error in the Court of Appeals the allowance of interest and penalty. Reviewing the facts of the case, the Court of Appeals concluded that neither the penalty nor the interest should have been awarded, in view of the fact that the insured had not made a definite or formal demand for payment until less than sixty days prior to filing suit. T.C.A.

§ 56–1105 allows a penalty, in the discretion of the trier of fact, when the insurer refuses to pay "within sixty (60) days after a demand shall have been made by the holder of the policy on which said loss occurred . . . . ."

The vehicle in question was purchased by Mr. Robert L. Johnson, the named insured, in March 1974. The purchase price was $5,313.50, not including sales tax. It was a new vehicle and was used primarily by the insured's wife and his college-age son, and was then taken by the son, Robert D. Johnson, to college with him in January. It was stolen on the night of January 4, 1975, which was during a weekend, and the loss was promptly reported to the insurance carrier at the beginning of the next week.

The proof shows that the insurance carrier took at least two different statements from the insured's son, but neither of these has been filed in the record, and the dates do not appear. It further does not appear in the record whether a formal proof of loss was filed. The insured's son testified that he did not make a formal demand, or at least a written demand, upon the insurance company, but did state that he thought the vehicle was worth approximately $5,000.00 on the date of the loss. He said that he never really made any fixed demand but told the insurance carrier that he wanted "the face value of the car."

The insured's son testified that the company never met his claim of $5,000.00. However, he advised the adjuster that "if he could get a car comparable to mine I would take that . . . . ."

The record reflects that the claim was handled by two different insurance adjusters, one in the area where the insured's son was attending college, and the other in the area where the insured resided. The insurance carrier did not consider that the vehicle was worth the amount so close to the original purchase price, as suggested by the insured's son, because it had been used for approximately nine months and had been driven between seven thousand and eight thousand miles.

On March 12, 1975 the insured's son retained counsel, and a written demand was made by the attorney upon the insurance carrier for settlement. Thereafter the company and counsel for the insured negotiated extensively in an effort to find a replacement vehicle comparable to the stolen automobile. The insurance adjuster testified that he had located three vehicles in Bristol, roughly comparable to the automobile in question, any one of which he could have purchased for $3,650.00. None of the negotiations succeeded, however, and suit was filed on behalf of the insured on April 26, 1975.

At the trial an appraiser testified for the insured, fixing the approximate value of the vehicle on the date of the loss at $4,500.00. The adjuster for respondent testified that in his opinion it was worth between $3,850.00 and $3,900.00.

■ It is apparent that there was a genuine dispute between the parties in the case as to the fair value of the vehicle on the date of the theft. While there was a delay in the adjustment of the loss, it does not appear that the insurance carrier was consciously indifferent to the claim of the insured or that it acted out of any improper motive. There were genuine efforts to find a replacement automobile which would be mutually satisfactory. Under all of the circumstances we agree with the Court of Appeals that the statutory penalty should not be applied to this case, and we concur in its deletion of the penalty, in the amount of $440.00, from the judgment.

The allowance of interest, however, is in a somewhat different category. While the penalty statute does make reference to interest as well as penalty, interest may be allowed, in proper cases, wholly apart from the penalty statute.

■ An unliquidated loss on an insurance policy such as the one in question usually does not bear interest as a matter of right under T.C.A. § 47–14–107, but it is well settled that the trier of fact may, in his discretion, allow interest upon an unliquidated claim for property damages or breach of contract. In the case of Phoenix Ins. Co. v. Jordan, 28 Tenn.App. 11, 184 S.W.2d 721 (1944), interest was allowed upon a fire loss, the Court holding that if the policy of insurance did not fall within the terms of the statute allowing interest as a matter of right, then its allowance would be discretionary. The Court found no abuse of discretion on the part of the chancellor in awarding it. See also Textile Workers Union of America v. Brookside Mills, Inc., 205 Tenn. 394, 402–403, 326 S.W.2d 671 (1959); Owen v. Holdway, 57 Tenn.App. 713, 718, 425 S.W.2d 623 (1967); Thayer v. Wright Co., 50 Tenn.App. 515, 531, 362 S.W.2d 805 (1961); Akers v. Sedberry, Inc., 39 Tenn. App. 633, 646, 286 S.W.2d 617 (1955).

The rule was recently stated by the Court of Appeals for the Sixth Circuit as follows:

"The fact that the claim does not fall within the terms of the statute making interest mandatory does not preclude the granting of interest; in Tennessee the granting or withholding of interest prior to judgment in cases not falling under the statute is within the discretion of the trial judge." Farmer's Chemical Assoc. v. Maryland Cas. Co., 421 F.2d 319, 323 (6th Cir. 1970).

■ In the present case the trial judge awarded pre-judgment interest because the vehicle was financed and the amount allowed represented the increased obligation of the insured to the mortgagee between the date of the loss and the date of trial. We are unable to say that the trial judge abused his discretion in making this allowance, and accordingly we restore the amount of pre-judgment interest awarded by the trial judge, making the judgment $4,670.24. The entire judgment, of course, bears interest from the date of its entry in the trial court until payment. T.C.A. § 47–14–110.

Judgment will be entered in this Court accordingly, and all costs on appeal will be equally divided between the parties. Costs accrued in the trial court will be taxed to the respondent.

COOPER, C. J., and FONES, J., concur.

HENRY and BROCK, JJ., dissent.

HENRY, Justice dissenting.

I dissent from so much of the Court's opinion as affirms the Court of Appeals' reversal of the trial judge's award of a ten percent "bad faith" penalty.

The majority ignores the correct standard of review and, in so doing, falls into the same error as was committed by the Court of Appeals of substituting its judgment for that of the trial judge. Sec. 27–303, T.C.A. provides that in "[a]ll cases tried in a court of record without the intervention of a jury", the hearing in the appellate court "shall be de novo upon the record of the trial court, accompanied by a *presumption of the correctness* of the judgment or decree of the trial court, *unless the preponderance of the evidence is otherwise.*" (Emphasis supplied.) I cannot find from the record in this case that the evidence preponderates against the correctness of the conclusion reached by the trial judge. To the contrary, I find that the record amply supports the trial judge's conclusion that the insurer was consciously indifferent to the insured's repeated pleas for a settlement and that once the insurer began negotiations, it conducted them in less than good faith.

The record in this case shows no reason for withholding payment on the Johnsons' loss. Although the insurer's Answer denies all allegations except that the company insured the car in question, there was never any doubt that it was stolen and that the insurer was liable on the loss. The insurer's case before the trial court was aimed at avoiding any interest or penalties on the loss, not on avoiding liability. While the Court of Appeals found that the insurer was not required to pay the loss because the Johnsons had demanded more than the car was worth, the trial court evidently found and the record shows that the figure was an off-hand estimate of the car's value by Bobby Johnson to an adjustor, not a demand for a specific amount. Even if the estimate were a demand for payment, an excessive demand by the insured does not relieve the insurer of the obligation to bargain in good faith. *State Automobile Ins. Co. of Columbus, Ohio v. Rowland*, 221 Tenn. 421, 427 S.W.2d 30 (1969). Similarly the majority here finds the insurer justified in withholding payment because of "a genuine dispute between the parties . . . as to the fair value of the vehicle on the date of the theft." But the trial court found that there could have been no dispute—at least not until the Johnsons became so exasperated at being ignored by their insurer that they hired an attorney to extract an offer from the company. Even after the insurer made the offer, which was $300.00 lower than the company's own adjustor recommended and $900.00 lower than the "bluebook" price, the insurer made no new offer and broke several appointments to show Bobby Johnson possible replacement cars.

The Majority Opinion concedes that Sec. 56–1105, T.C.A. "allows a penalty *in the discretion of the trier of fact* . . . ." (Emphasis supplied.) Many years ago this Court, in *Daugherty v. Stuyvesant Ins. Co.*, 169 Tenn. 300, 86 S.W.2d 1095 (1935), speaking through Justice McKinney, spoke of this discretion thusly:

It will be observed that this discretion is conferred *upon the trial court and not upon the appellate courts*, and the action of the trial court in this matter can only be reviewed or altered where he has *abused his discretion.* (Emphasis supplied.) 169 Tenn. at 303, 86 S.W.2d at 1096.

The majority, in effect, holds that the trial judge abused his discretion. I disagree.

This insurer's conduct in such a clear case of liability could properly be found to be "not in good faith." While the trial court might have refused to so find, I think it inconceivable that we should hold that awarding a ten percent penalty on these facts was an abuse of discretion.

BROCK, J., concurs.