**David E. PALMER and wife, Dorothy J. Palmer, Plaintiffs-Appellees,**

v.

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY, Defendant-Appellant.**

Court of Appeals of Tennessee, Eastern Section.

Aug. 19, 1986.

Permission to Appeal Denied by Supreme Court Nov. 3, 1986.

David E. Smith, Hodges, Doughty & Carson, Knoxville, for defendant-appellant.

Charles T. Eblen, with Goodwin & Eblen, Lenoir City, Ivo W. Sanders, Loudon, for plaintiffs-appellees.

OPINION

SANDERS, Judge.

The Defendant has appealed from a jury verdict for the Plaintiffs on a fire insurance policy for fire damage to a residence which Defendant insists was incindiary.

The Plaintiffs-Appellees, David E. Palmer and wife, Dorothy J. Palmer, filed suit against the Defendant-Appellant, Nationwide Mutual Fire Insurance Company, on a fire insurance policy which the Defendant had issued on the Plaintiffs' residence. The complaint alleged the Plaintiffs' home was destroyed by fire on March 20, 1982, and at the time of the fire the Defendant had in force a fire insurance policy insuring the residence for $33,500, the contents for $16,750, and living expenses of $6,700. In the complaint Plaintiffs asked for the full coverage of the policy plus 25% bad faith penalty.

The Defendant, for answer, admitted the policy of insurance was in force at the time of the fire but denied the Plaintiffs were entitled to recover because they had set the fire that caused the damage to the house, or procured the setting of the fire.

Upon the trial of the case the jury found the issues in favor of the Plaintiffs and a judgment was entered for $35,000 as damages to the residence less $15,859.02 which Defendant had paid to the mortgage holder, $14,000 for the contents, $4,053 for additional living expenses, and a 20% bad faith penalty.

Defendant's motion for a new trial was overruled and it has appealed, presenting two issues for review. The first issue is: "Did the trial court err in overruling the Defendant's motion for new trial or an entry for judgment N.O.V. on the issue of a bad faith penalty, based upon the proof offered by Defendant's witnesses?"

■ The Defendant's insistence that the bad faith penalty is inappropriate in this

case must be sustained. Under the holdings of our courts, before there can be a recovery of penalty under T.C.A. § 56–7–105, (1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making his demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith. *See De Rosset Hat Co. v. London Lancashire Fire Insurance Co.*, 134 Tenn. 199, 183 S.W. 720 (1915); *St. Paul Fire & Marine Insurance Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186 (1913); and *Third Nat. Co. v. Thompson*, 28 Tenn.App. 436, 191 S.W.2d 190 (1945).

From a review of the record, we find the proof overwhelmingly establishes the insurer was acting in good faith. As our Supreme Court pointed out in *Johnson v. Tennessee Farmers Mut. Ins. Co.*, 556 S.W.2d 750 (Tenn.1977), delay in settling a claim does not constitute bad faith when there is a genuine dispute as to value, no conscious indifference to the claim, and no proof that the insurer acted from "any improper motive." *Id.* at 752. "If an insurance company unsuccessfully asserts a defense and the defense was made in good faith, the statute does not permit the imposing of the bad faith penalty." *Nelms v. Tennessee Farmers Mut. Ins. Co.*, 613 S.W.2d 481, 484 (Tenn.App.1978). The plaintiff has the burden of proving bad faith and, in this case, that burden was not met.

Since the statute is penal in nature, it must be strictly construed. *See St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186 (1913); *Walker v. Tennessee Farmers Mut. Ins. Co.*, 568 S.W.2d 103 (Tenn.App.1977).

The proof shows that the night the house was damaged by fire two separate fires occurred. The first fire was reported to the Lenoir City Fire Department at 9:52 p.m. The second fire was reported at 11:39 p.m. The Plaintiffs had left their home around 6:30 or 7:00 in the evening of the

fire to visit their daughter who apparently lived some distance from the home but in the same community. Some time after the first fire had been reported someone reached the Plaintiffs by telephone and informed them of the fire and they immediately returned to their home. When they were only about a quarter of a mile from their home they met one of the fire trucks returning from their home to the fire station. Although all the firemen who were at the scene of the first fire, which was a minor fire, testified they had put the fire out, the Plaintiffs both testified they saw sparks and flames coming from the roof of their house as they drove up their driveway. They further testified they spent five to eight minutes trying to put the fire out before they called the fire department.

The other proof in the record strongly contradicts this testimony. A number of the firemen who assisted in putting the first fire out testified concerning it. Their testimony shows that when they arrived at the house about five minutes after the fire was reported, the house was locked. It was necessary to break the kitchen door to get into the house. The house was full of smoke and they found a fire of undetermined origin in a small hall near the center of the house. A piece of paneling was on fire. The fire extended from the floor up the wall for about four feet. They put the fire out and tore the paneling off to be sure there was no fire behind it. They checked the entire house to make sure there was no one in the house and thoroughly checked the attic to make sure there was no fire in the attic. They opened doors and windows to clear the house of smoke before leaving and were sure no other fire existed at the time.

Mr. Steve Cook, the Lenoir City policeman who reported the fire, testified he was at the premises while the fire was being put out. He stated that one of the two fire trucks was parked behind his car and blocked his passage after the fire was out. This truck left before he did to return to the station. This is the truck which met the Plaintiffs when they were only about a quarter of a mile from their home. Mr.

Cook further testified it was 29 minutes before eleven o'clock when he left the premises with the other people who were there. From this proof it is obvious the Plaintiffs arrived on the scene within minutes after Mr. Cook and the others departed. The fire alarm report for the Lenoir City Fire Department shows the report of the second fire was received at 11:39. From this evidence one must conclude the Plaintiffs had been on the premises for more than an hour before the second fire was reported.

The testimony of the witnesses reveals a rather incredible story as to the changes which took place in the premises between the firemen's departure from the first fire and their return. It is estimated the firemen were back at the premises within four to five minutes after receiving the second call. When they returned, flames were leaping out of all the doors and windows. A rear passageway was blocked by a refrigerator which had been moved since the first fire. All of the windows had been broken by a blunt instrument from inside the house. Although the house was neat and in good order after the first fire, it was in complete disarray when they returned. Dresser drawers had been pulled out and the contents scattered about the house. A mattress had been taken off one of the beds and was up against the wall. There were separate fires in every room in the house.

The fire chief testified they found a number of disconnected fires in the house where piles of clothing had been set ablaze. The night of the fire he found six or eight separate points of origin of fires and later found a total of 14 points where separate fires had been started. The State Deputy Fire Marshall testified he investigated the premises and after finding four separate origins of fire he was satisfied it was arson and didn't look for more. A Mr. Lentini, a fire cause and origin expert with impressive credentials, identified 14 points of fire origin. In response to a question on cross-examination he described the situation by saying, "This is one of the most obvious cases of arson that I've ever seen." Mr. Stevenson, who is a large-loss property specialist with Nationwide Mutual, identified 16 separate origins of fire in the premises and filed a number of pictures to verify his findings.

The Defendant had the benefit of all this information when it declined to pay the Plaintiffs' claim and it was because of this information that the claim was denied.

The record is devoid of any proof which would warrant a bad faith penalty, and the court was in error in affirming the jury award of the penalty.

The Appellant's second issue is: "Did the trial court err by admitting testimony of Grace Rice of statements made by David E. Palmer after the first fire loss to the effect he had no insurance on the property, that he had nothing when he moved there, and that he would have to start over?"

The testimony of Ms. Rice about which the Appellant complains was introduced by the Appellees after Mr. Palmer had testified that at the time of the fire he knew he had insurance but he didn't know how much. He stated that at the time he put a mortgage on his house he was told he had to get insurance and he thought the policy was "to cover the bank." Mrs. Palmer had also testified she knew they had to get a policy of insurance at the time they got their loan but she didn't know how much it was. As pertinent to this issue, the following transpired while Appellees' counsel was interrogating Ms. Rice:

"Q. O.K. Did you have an opportunity to talk to Mr. Palmer and Mrs. Palmer?

"A. I had—You know, after the fire and we all got back in and their daughter didn't have a coffee pot and I did and theirs was burned so I went over and made coffee and brought it over, amd we set and talked, and David was real tore up, and Dean was crying and I asked them if they had insurance at all—

"MR. SMITH: Your Honor, I object to that.

"THE COURT: Sustain the objection.

"Q. Did they make any statement to you about any insurance?

"THE COURT: Just a minute. I sustained the objection.

"Q. Did they talk to you about any insurance?

"A. He said—

"MR. SMITH: Your Honor, again I object to that. It's hearsay as far as we're concerned.

"THE COURT: Who are your referring to?

"MR. EBLEN: Mr. Palmer, did he talk to her about any fire insurance.

"THE COURT: I'll let her answer.

"A. He just said they didn't have a penney's worth of insurance but the bank had their loan covered, he said at least they'll get their money. And I said what are you going to do and he said start over again, I didn't have nothing when we moved here, said we can start over."

■ Clearly, the testimony was a self-serving declaration, and inadmissible.

"It is a general rule that self-serving declarations-that is, statements favorable to the interest of the declarant-are not admissible in evidence as proof of the facts asserted, regardless of whether they were implied by acts or conduct, were made orally, or were reduced to writing. The rule which renders self-serving statements inadmissible is the same in criminal prosecutions as in civil actions.

"The vital objection to the admission of this kind of evidence is its hearsay character; the phrase 'self-serving' does not describe an independent ground of objection. Such declarations are untrustworthy; their introduction in evidence would open the door to frauds and perjuries, and the manufacturing of evidence....

"A self-serving declaration, within the meaning of the rule herein stated, is a declaration made at some time and place out of court, and does not include testimony which one gives as a witness at the trial."

29 Am.Jur.2d, *Evidence*, § 621, p. 674, 675.

There are a number of exceptions to this rule, such as exclamation of pain and suffering, etc., as set forth in 29 Am.Jur.2d, *Evidence*, § 622, but none of those exceptions are applicable to the case at bar. *See also, Harry Levitch Jewelers, Inc. v. Jackson*, 573 S.W.2d 746 (Tenn.1978). The Appellees insist the statement falls within the excited utterance exception to the rule and was therefore admissible. They rely upon the case of *National Life & Accident Ins. Co. v. Follett*, 168 Tenn. 647, 80 S.W.2d 92 (1935) as supportive of their contention. We think their reliance upon the *National Life & Accident Ins. Co.* case is misplaced and we do not think the excited utterance rule could be relied upon in an arson case where the evidence is so convincing that the one who made the statement was the one who committed the arson.

Appellees also insist that even if the evidence was inadmissible its admission was harmless error. We cannot agree. Rule 36(b), T.R.A.P., provides that a judgment "shall not be set aside unless, considering the whole record, error involving a substantial right more probably than not affected the judgment." We think the statement here involved goes to the very heart of the Appellant's defense. Its only defense was that the Plaintiffs had burned or procured the burning of their house. An essential ingredient of such a defense is establishing a motive. Under the proof in this record, as we see it, the only thing the jury could rely upon in order to find as they did was lack of motive. We can see no reason for the Plaintiffs' offering the evidence in issue except to persuade the jury they had no motive for burning the house.

The issues are found in favor of the Appellant. The judgment of the trial court is reversed. The issue of a bad faith penalty is dismissed. Otherwise the case is remanded for a new trial. The cost of this appeal, together with the cost of the trial court, is taxed to the Appellees.

FRANKS, J., and T. MACK BLACKBURN, Special Judge, concur.