## PENNSYLVANIA LUMBERMENS MUTUAL FIRE INS. CO. v. HOLT et al. (three cases).— 223 S. W. (2d) 203.

Middle Section.   January 27, 1949.

Petition for Rehearing denied April 30, 1949.

Petition for Certiorari denied by Supreme Court, October 7, 1949.

560

Bailey & Powell, of Nashville, for plaintiff in error.

Goodpasture, Carpenter & Dale, of Nashville, for defendant in error.

HOWELL, J. These three cases involve the liability of the defendant Pennsylvania Mutual Fire Insurance

Company to the plaintiffs Thomas M. Holt and Mrs. E. L. Holt, doing business as the Harley-Holt Furniture Company upon three contracts of fire insurance alleged to have been valid and outstanding on the day of the fire February 9, 1947, in which furniture and household goods belonging to the plaintiffs were destroyed.

The three separate suits, one on each contract, were tried together and the total of insurance claimed by the plaintiff to have been in force at the time of the fire was $26,000. The loss proven, about the amount of which there was no controversy, was $20,236.12.

The cases were heard by the Circuit Judge and a jury and resulted in a judgment for the plaintiffs and against the defendant for the amount sued for with interest and costs. The defendant has by proper procedure perfected appeals in error to this Court and has filed a number of assignments of error.

The record discloses that on June 25, 1946, the plaintiffs had a fire loss at their place of business in Nashville and that the building in which their business was located was burned to such an extent that they had to secure another location.

Pending the rebuilding of their place of business the plaintiffs also arranged for space in other buildings in which to store the furniture and household goods which they had purchased to restock the store when it was ready for occupancy. One of the places rented by them was a part of a large warehouse on Blackman Road, South of Thompson Lane and near the Radnor Yards of the L. & N. Terminal Co. They purchased goods and stored them in this warehouse. One of the plaintiffs arranged with the local agent of the defendant company to give them fire insurance protection and told him where

the goods were stored and that he wanted full protection. On September 1, 1946 the defendant Company issued to plaintiffs a policy N. 428054 insuring the furniture of the plaintiff for one year and the form No. 160 attached is described as "Uniform Standard—Single State Specific Rate At Each Location Reporting Form A —Monthly average". Under the heading "List of Locations and Limits" a location on 4th Avenue South is covered for $35,000, one on 9th Avenue North for $25,000, one on 8th Avenue South for $5,000 and sub-section 7 under this heading is as follows: "At any other location aquired if included in the next succeeding monthly Report of Values as provided in the Value Reporting Clause—Limit of Liability for all Contributing Insurance—$10,000.00." Subsection 10, the value reporting clause is as follows: Value Reporting Clause—It is a condition of this policy that the Insured shall report to this Company not later than thirty (30) days after the last day of each month, the exact location of all property covered hereunder, the total value of such property at each location and all specific insurance in force at each of such locations on the last day of each month. At the time of any loss, if the Insured has failed to file with this Company reports of values as above required, this policy, subject otherwise to all terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values, filed prior to the loss."

Section 1 is as follows: "Provisional Amount Clause —The amount of insurance provided for hereunder is provisional and is the amount on which the deposit premium is based, it being the intent of this insurance to insure hereunder the total value of the property de-

scribed herein, subject to the limits of liability and provisions for other insurance herein provided. Any loss in excess of the limits stated in this policy shall be borne by the Insured or by such other insurance to the extent of such excess, notwithstanding the requirement that premium is to be adjusted on the basis of full values reported.''

The monthly reports were made by the plaintiffs and the last report as of January 30, 1947, shows stock at Thompson Lane location to be $20,236.12.

On September 17 a ''Binder certificate'' was issued by the defendant to the plaintiffs covering the contents of the warehouse on Blackman Road until October 14, 1946 for $10,000. On October 14, 1946 this binder was renewed by another certificate reducing the amount and covering the same property for $5,000 until November 14, 1946. On November 14, 1946, another renewal binder was issued on this same property for $6,000 until December 14, 1946. Another renewal until January 14, 1947 for $8,000 was issued and on January 14, 1947 a Binder Certificate renewing the former binder was issued upon this same property for $8,000 for one month. The fire occurred in the night of February 8, 1947 or early morning of February 9, 1947. Policy No. 428067 was issued by the defendant and is dated September 17, 1946, and originally covered the contents of the Blackman Lane warehouse for $5,000. By endorsements the amount was changed on October 14, 1946 to $6,000 and on November 22, 1946 to $8,000. Carbon copies of the binders above described are attached to this policy and it was delivered to the plaintiffs after the fire. It is the insistence of the defendant that this policy No. 428067 was issued in lieu of the binder then outstanding. The

defendant admitted liability for $8,000 upon this policy and paid that amount into the registry of the Court. The last sentence in the binder here in question is: "Whenever the policy of the insurer is issued in lieu of its undertaking under this binder, its obligations hereunder shall cease and be void."

These three suits are based upon the two policies and the binders above described.

A jury was demanded and issues of fact were submitted. It was insisted by the defendant that the issues in the cases involved questions of law which should be decided by the Court and not by a jury and the issues were submitted to the jury with the understanding that the defendant was not agreeing thereto and such submission of the issues should be without prejudice to the defendant's right to insist that the only issues involved were questions of law for the Court to determine. The declarations had alleged wilful failure to pay by the defendant and asked for an additional judgment under the Statute for 25% penalty.

While the jury was engaged in considering the issues submitted the plaintiffs moved the Court for leave to amend their declarations so as to withdraw therefrom their claims for penalties in all three cases and that the Court direct a verdict on the remaining issues on the ground that they were all questions of law and not issues of fact. In case No. 1 which was the suit upon the reporting form of policy No. 428054, the jury failed to agree on any issues submitted except the first which was "What was the total amount of the fire loss suffered by plaintiffs at the Thompson Lane location on or about February 9, 1947?" There was no controversy about this and the answer was $20,236.12. The issues in cases

Nos. 2 and 3 were answered by the jury, which in substance found that proper proofs of loss had been filed by plaintiffs, that the tender of $8,000 made by the defendant was not unconditionally made and that the defendant's failure to pay was not in bad faith and that the policy No. 428067 was in fact issued in lieu of the binder involved.

The record then discloses that:

"Upon the return of the issues in said cases, by the jury, the plaintiffs renewed their motion for a directed verdict on the issues submitted in suit No. 1 on the ground heretofore stated, and further moved the Court for judgment in their favor in all the cases, notwithstanding the answer of the jury to issue 3 in suit No. 3 as said issue was not an issue of fact properly submitted to the jury but was a question of law for determination by the Court. Defendant moved the Court for judgment in its favor on the answers of the jury to the issues submitted in suit No. 3.

"Whereupon, after argument of attorneys and upon full consideration of the entire record in all the cases, the Court doth order, adjudge and decree that the motions of the plaintiffs be and they are sustained, and that plaintiffs, Thomas M. Holt and Mrs. E. Holt, doing business as Harley-Holt Company, have and recover of the defendant, Pennsylvania Lumbermens Mutual Fire Insurance Company, a judgment in the full amount of their loss in the sum of $20,236.12, with lawful interest thereon from the date of the institution of the suits, the 13th day of June, 1947, in the amount of $954.56, making in all a total judgment of $21,190.68, and all the costs of the three cases, for all of which let execution issue.

"The Court further ordered, adjudged and decreed that the judgment herein granted to plaintiffs be apportioned and paid from the proceeds of the contracts of insurance sued on in these three cases in the following manner, to-wit:

"By application to said judgment of the full face amount of the proceeds of the binder certificates sued on in suit No. 3;

"By application to said judgment of the full face amount of the proceeds of Policy No. 428067, sued on in suit No. 2.

"All the remaining portion of the judgment against the defendant not satisfied by the proceeds of the foregoing contracts to be paid by application of the proceeds of policy No. 428054 sued on in suit No. 1, not to exceed the sum of $10,000.00 plus lawful interest and the cost of the three cases."

We think the trial Court was right in its final conclusion that the principal issues for determination were questions of law for the Court and not for the jury. There was no dispute about the amount of the loss and the question of the good faith of the defendant in its refusal to pay was withdrawn. This left only the proper construction of the contracts sued upon and the liability of the defendant under these contracts. The law is well settled that the construction of written contracts raises questions of law to be decided by the Court and not by a jury. See, Pile v. Carpenter, 118 Tenn. 288, 99 S. W. 360; Toomey v. Atyoe, 95 Tenn. 373, 32 S. W. 254, and many other authorities.

We are of the opinion that the trial Judge correctly held that the defendant was liable to the plaintiffs upon the first policy issued, the one referred to as the

Reporting Form No. 428054. This policy was dated September 1, 1946 and purported to insure the plaintiffs "At any other location acquired if included in the next succeeding Report of Values as provided in the Value Reporting Clause—Limit of Liability for all Contributing Insurance—$10,000.00." The plaintiffs had complied with the provisions of the Value Reporting Clause and the last report as of January 30, 1947, showed stock of furniture at the Thompson Lane location to be $20,236,12.

The maximum liability on this Reporting Form policy was $10,000. No binders were called for or necessary as to this policy. The assignments of error applicable to the suit on this policy were overruled.

The remaining two cases involve the liability of the defendant upon the binders and the policy issued after the fire on No. 428067.

A binder may be described as a written memorandum of the most important terms of a preliminary contract of insurance intended to give temporary protection to the owner pending the investigation by the company or until the issuance of a formal policy. In this case the issuance of binders was appropriate because the plaintiffs could not tell in advance how much furniture they would have stored at any one location or how long it would be there. The time for their occupancy of the building where their principal business had been conducted and which was being repaired or rebuilt was most uncertain.

In Vol. 29 American Jurisprudence on page 158 a binder is described as follows:

"A binding slip or interim receipt, also called a 'binder,' is ordinarily a document given to the insured

to bind the company in case of loss occurs pending action upon the application and the actual issuance of a policy. It is generally held that such a slip or receipt issued by the duly authorized agent of an insurance company constitutes a temporary contract of insurance under which the company is liable for any loss occurring during the period covered by it. A statute which purports to establish certain formal rquisites with respect to contracts of insurance, but, by its terms, is applicable only to policies of insurance does not affect the validity of a temporary contract for insurance pending the issuance and delivery of a formal policy. Temporary insurance may be affected by entering the risk on the insurer's book, a policy to be issued later. Such binding slips or interim receipts or temporary insurance, may ordinarily be revoked by notice to the insured that the company declines the risk.

"Binding slips may be, and ordinarily are, informal instruments. It is not essential that they express all the elements of the contract, such as the rate of premium, or even, it has been held, the name of the insurer. The essential elements of the contract may be implied. It is sufficient as to the rate, for example, that the binder shows by necessary implication an agreement to pay whatever rate may be fixed. Furthermore, provisions in the charter of a company, as to the mode of executing policies, do not apply to binding slips.

"Generally, the terms and conditions of the temporary contract of insurance effected by a binding slip or a book entry are those expressly agreed upon or those of the policies ordinarily used by the company to cover similar risks."

■ It is customary and proper for the convenient fixing of premiums and payment of claims that a policy

is issued in lieu of and to take the place of binders even after a loss has been sustained which was covered by the binder. In this case we have carefully examined the exhibits and are constrained to the conclusion that there is no liability on the part of the defendant upon the binder after the policy was issued to take its place. The defendant is liable on the policy No. 428067 but not upon the binder which the policy replaced. It is not liable upon both of them, the binder and the policy. The assignments of error directed to the judgment upon the binder in case No. 3, the suit on the binder, are sustained and the assignments as to case No. 2, the suit on policy No. 428067, are overruled.

█ It is insisted for the defendant that proper proofs of loss were not filed by the plaintiffs. We find no merit in this contention. A complete proof of loss was filed making a claim against the two policies and the binder and we think this substantially complied with the requirements as to proofs of loss and enabled the defendant to consider its rights and liabilities under the contracts sued upon.

In American Jurisprudence Vol. 29 on page 840 it is said:

"Unless the policy specifically provides otherwise, no particular form of proof of loss is required other than one adequate to enable an insurer to consider its rights and liabilities. No matter what the form of a notice of loss may be, if it operates to bring the attention of the insurer to the loss, sets forth the essential facts upon which the liability of the insurer depends, and appears credible, it is sufficient; and unless the policy so requires, notice or proofs of loss required by the policy need not be in writing, or in the form of an affidavit.

"Generally speaking, provisions for the giving of notice of loss or furnishing of proofs of loss to an insurer will be liberally construed in favor of the insured, and a substantial compliance therewith, as distinguished from a strict compliance, will suffice."

The defendant also insists that it is not liable for interest. It claims a tender before the suit was filed and filed a plea of tender and paid that amount into court with its plea. We find that this tender was not unconditional in that the amount was tendered in full settlement of the liability of the defendants under all the contracts sued upon. This tender was not sufficient to avoid liability for interest. In the case of Phoenix Ins. Co. v. Jordan et al., 28 Tenn. App. 11 on page 29, 184 S. W. (2d) 721, on page 728, in an opinion by Hickerson, Judge, this Court said:

"There remains only the question of the allowance of interest. Code, Section 7305 provides: 'Demands bearing interest.—All bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned.'

"Under this section courts are compelled to allow interest in all cases which come within its terms. Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn. 391, 258 S. W. 776. In People's Bank & Trust Company v. United States Fidelity & Guaranty Company, 156 Tenn. 517, 3 S. W. (2d) 163, 164, our Supreme Court said: 'A policy of life insurance falls within this section and bears interest from the time it becomes due and payable. The allowance of interest is imperative. Knights of Pythias v. Allen, 104 Tenn. 623, 58 S. W. 241. Fire insurance poli-

cies, accident insurance policies, and other insurance contracts proper would come under this section of the Code.' "

It results therefore that the judgment of the trial Court will be modified and a judgment entered here upon the Reporting Policy No. 428054, case No. 1, for $10,000 and upon policy No. 428067 in case No. 2, for $8,000, in all for $18,000, with interest from June 13, 1947, and the costs of the cause. The cases will be remanded to the Circuit Court of Davidson County for the disposition of the $8,000 paid into Court and the execution of the decree as modified.

Modified, affirmed and remanded.

Felts and Hickerson, JJ., concur.

## On Petitions for Rehearing.

HOWELL, J. In these cases we are presented with a petition to rehear by appellant Insurance Company in which it is insisted that interest should not be allowed on the $8,000 tendered into Court. This matter was considered and discussed in the original opinion and it was said: "The defendant also insists that it is not liable for interest. It claims a tender before the suit was filed and filed a plea of tender and paid that amount into court with its plea. We find that this tender was not unconditional in that the amount was tendered in full settlement of the liability of the defendants under all the contracts sued upon. This tender was not sufficient to avoid liability for interest."

It is also insisted that a statement in the opinion as to the necessity for binders as to policy No. 428054 was erroneous. The statement complained of is:

"This policy was dated September 1, 1946, and purported to insure the defendants. 'At any other location

acquired if included in the next succeeding Report of Values as provided in the Value Reporting Clause— Limit of Liability for all Contributing Insurance— $10,000.00.' The plaintiffs had complied with the provisions of the value Reporting Clause and the last report as of January 30, 1947, showed stock of furniture at the Thompson Lane location to be $20,236.12.

"The maximum liability on this Reporting Form policy was $10,000.00. No binders were called for or necessary as to this policy."

We are not convinced that this statement is erroneous.

The matters complained of in the appellant's petition to rehear were fully considered and discussed in the opinion filed.

We are also presented with a petition to rehear by the appellees. No matter not fully considered and determined in the opinion is called to our attention in this petition to rehear.

No question not considered and passed upon at the hearing appearing from either of the petitions to rehear they are both denied at the cost of petitioners.

Petitions to rehear denied.

Felts and Hickerson, JJ., concur.